# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| ANITA MOSS *on behalf of herself and all others similarly situated*, | Civil Action No. 3:20-cv-137 |
| Plaintiffs, | |
| v. | |
| SENIOR CARE CAROLINAS, PLLC, INNOVATIVE HEALTHCARE MANAGEMENT, LLC and MELISSA LYNCH, | COLLECTIVE AND CLASS ACTION COMPLAINT |
| Defendants. | |

COME NOW Plaintiff, ANITA MOSS ("Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel, and files this Complaint as follows:

Plaintiff, Anita Moss, on behalf of herself and all others similarly situated, brings this action against Defendants SENIOR CARE CAROLINAS, PLLC, a North Carolina Corporation, INNOVATIVE HEALTHCARE MANAGEMENT, LLC, a North Carolina Corporation, and MELISSA LYNCH, an individual, (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* , and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 *et seq*.

## NATURE OF THE ACTION

1.    Plaintiff alleges on behalf of herself, individually, and all other similarly situated current and former non-exempt hourly employees of the Defendants, who elect to opt-in to this action pursuant to the collective action provision of 29 U.S.C. § 216(b) (the "Collective Action

Members") that they are entitled to, (i) unpaid wages including overtime premiums for all hours worked exceeding forty (40) in a workweek; (ii) overtime bonus premiums; and (iii) statutory penalties, including liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

2.      Plaintiff further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself, individually, and all similarly situated employees of Defendants, who work or worked in the state of North Carolina (the "North Carolina Class") that Defendants violated the NCWHA by failing to pay all wages earned as promised and that Plaintiffs are entitled to all unpaid wages, plus interest, liquidated damages, costs and fees and penalties as allowed for Defendants' violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.1 *et seq.*

**THE PARTIES**

3.      Plaintiff ANITA MOSS ("MOSS") is an adult individual who is a resident of Charlotte, North Carolina, and worked as a dedicated caregiving employee for Defendants beginning in or around November 2017 continuing through August 28, 2019.

4.      Written consent form for MOSS is being filed with this Complaint as Exhibit A.

5.      Defendants control and/or own and/or operate senior living centers, with at least five current sites throughout North Carolina, with an identified principal office street address of 19401 Old Jetton Road Suite 100, Cornelius, North Carolina, 28031-5637.

6.      Defendant, MELISSA LYNCH (hereinafter "LYNCH") is a registered nurse and is also the Organizing Member of DEFENDANT SENIOR CARE CAROLINAS, PLLC ("SENIOR CARE") with an address identified as 9640 Gilead Grove Road, Huntersville, NC, 28078.

7.     Defendant LYNCH is also the Chief Executive Officer of Defendant INNOVATIVE HEALTH CARE MANAGEMENT, LLC (hereinafter "INNOVATIVE") with its principal place of business 19401 Old Jetton Road Suite 100, Cornelius, North Carolina, 28031-5637.

8.     Defendant INNOVATIVE maintains control over and participates in the operation of Defendant SENIOR CARE and Defendant LYNCH directly and/or indirectly acted and continue to act in the interest of SENIOR CARE and INNOVATIVE in relation to their employees. LYNCH and INNOVATIVE allocated compensation to employees, made wage payment decisions, set policy and practices regarding employee pay and made, and continue to make, hiring and firing decisions for SENIOR CARE.

9.     At all relevant times, Plaintiff and other similarly situated individuals were Defendants' "employees" as that term is defined by the FLSA and the NCWHA.

10.     At all relevant times, Defendants were, and are, "employers" as the term is defined by the FLSA and the NCWHA.

11.     Plaintiff is informed and believes, and based upon such information and belief alleges, that the Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

12.     Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high

3

corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

13. Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, Defendants, and each of them, proximately caused Plaintiff, and all others similarly situated and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

14. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiffs and the putative class herein.

15. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

16. Plaintiff is further informed and believe, and based upon such information and belief alleges, that LYNCH made all decisions on a daily basis regarding pay policies and exerted financial and operative control over INNOVATIVE and SENIOR CARE and is therefore individually liable under the FLSA and the NCWHA.

4

## JURISDICTION AND VENUE

17.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et. seq.*

18.     Defendants employed Plaintiff and employs/employed others in this judicial district, owns and operates a senior living care business in this judicial district, and is registered to transact business in the State of North Carolina.

19.     The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina.  Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

20.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## COVERAGE ALLEGATIONS

21.     At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22.     At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

23.     At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or

5

business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

24.     At all times hereinafter mentioned, Plaintiffs have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

25.     At all times hereinafter mentioned, Plaintiff was individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

26.     At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

27.     At all times hereinafter mentioned, Plaintiffs were employees within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## STATEMENT OF FACTS

28.     Defendant LYNCH is the originating manager of INNOVATIVE which operates SENIOR CARE.  SENIOR CARE operates at least five separate homes in and around North Carolina. Each site can have between 2-6 residents.

29.   Defendants employ non-exempt hourly employees with various titles but who are recognized as dedicated care officials. Defendants have employed care providers during the preceding three (3) years from the filing of this Complaint.

30.     Defendant SENIOR CARE under the direction of INNOVATIVE contracts with families and individuals to place their family member at one of their facilities to provide companion care services to the elderly and/or infirmed.

31.     On information and belief, Defendants LYNCH and INNOVATIVE provides Defendant SENIOR CARE with detailed employee handbooks for them to follow, which include

6

payroll and personnel issues, assignment procedure, hiring, dress code, and caregiver job duties, among others.

32.   During the applicable statute of limitations period, Defendants employed Plaintiff and other similarly-situated caregiver employees to provide companion care to the client ("client").

33.   The job duties of Plaintiff and other similarly situated employees, included:

a.   Light housekeeping: cleaning floors, vacuuming carpet, surface cleaning of bathrooms and furniture, water plants, trash removal, cabinet organization, etc.

b.   Meal preparation and feeding: cooking a complete, nutritionally balanced meal for the clients and feeding clients.

c.   Getting and sending mail.

d.   Laundry and ironing.

e.   Linen washing and bed making.

f.   Companionship care: visiting and talking with the client, reading, listening to music, taking them on walks, etc.

g.   Medication: providing medications and doing a first of the month medication count for accuracy and refills.

h.    Bathroom assist.

i.   Incontinence care.

j.   Hygiene assistance: shower / tub assistance, skin care, oral care, hair care, shaving, nail care.

k.   Assistance with dressing.

7

l.  Mobility and safety including ambulation assist and transfer assist, assistance with cane, crutches, walkers and wheelchairs, fall precautions and weight bearing, and repositioning in bed and side rails.

m.  Charting.

n.  Organizing activities.

34.  Defendants INNOVATIVE, SENIOR CARE, and LYNCH did not provide a mechanism to "clock in or out" or method to record hours that Plaintiff slept and otherwise allocated their time during their work shifts.

35.  Defendants, INNOVATIVE, SENIOR CARE, and LYNCH, scheduled the shifts for all of their dedicated care employees, including Plaintiff.

36.  Plaintiff and other similarly situated employees were required to remain onsite with the clients until another employee relieved them from their assignment.

37.  If Plaintiff, or another similarly situated caregiver employee's, scheduled shift ended and a relief caregiver employee was not present, Defendants required the on-duty caregiver employee to stay at their assigned site past their scheduled shift until another caregiver employee arrived to relieve them from their assignment.

38.  While on duty, Plaintiffs and other similarly situated caregiver employees were often required to work 24-hour shifts, many times on consecutive days.

39.  While Defendants purported to allow Plaintiff and other similarly situated caregiver employees to sleep during their shifts, there was no reasonable agreement to exclude sleep time as required by the regulations implementing the FLSA.

40.  While Defendants purported to allow Plaintiff and other similarly situated caregiver employees to sleep during their shifts, adequate sleeping facilities were not furnished

8

by the employer, as required by the regulations implementing the FLSA, because Plaintiff and other similarly situated caregiver employees were required to stay near the clients instead of in a separate, adequate sleeping facility so that they could fulfill the essential job duties of attending to the clients' bathroom and incontinence needs during the night, as well as providing adequate safety precautions and preventing the clients from falling, thus precluding Plaintiffs and other similarly situated caregiver employees from using a sleeping facility, even if one existed.

41.     While Defendants purported to allow Plaintiff and other similarly situated caregiver employees to sleep during their shifts, the Plaintiff and other similarly situated caregiver employees did not "usually get an uninterrupted night's sleep," within the meaning of the regulations implementing the FLSA, because the clients' interruptions that prevented Plaintiff and other similarly situated caregiver employees from getting five consecutive uninterrupted hours of sleep occurred at least half and usually more than half of the Plaintiff's and other similarly situated caregiver employees' shifts.

42.     Defendants knew that the clients required around the clock care, for bathroom and incontinence care, and the prevention of slip and falls and providing other safety precautions; these were the part of the essential job duties of the Plaintiffs and other similarly situated caregiver employees.

43.     Defendants knew that the inability to obtain five hours of uninterrupted sleep was inherent in the job of Plaintiffs and other similarly situated caregiver employees because of the essential job duties and Defendants' expectations for care provided to each and every client.

44.     Defendants knew that the clients' needs and the essential job duties required of Plaintiff and similarly situated caregiver employees, to care for the clients' bathroom and incontinence needs and prevent falls, prevented the Plaintiff and similarly situated caregiver

9

employees from obtaining five hours of uninterrupted sleep time, and yet Defendants knowingly and willfully deducted sleep time from the Plaintiffs' and similarly situated caregiver employees' calculation of hours worked.

45.     Defendants knowingly and willfully violated the provisions of the FLSA and its implementing regulations by deducting sleep time from the employees' hours worked while: (1) failing to provide an adequate sleeping facility; (2) failing to meet the requirement that the employees' time spent sleeping was usually uninterrupted; and (3) failing to have a reasonable, written agreement to deduct sleep time.

46.     Under the regulations implementing the FLSA, if no reasonable agreement to exclude sleep time exists, all hours spent on duty, including time spent sleeping, must be counted as work time.

47.     Under the regulations implementing the FLSA, if interruptions during which the employee performs tasks on behalf of the employer are so frequent that the employee cannot get reasonable periods of sleep totaling at least five hours during the scheduled sleeping period, the entire period must be counted as time spent working and paid accordingly.

48.     Plaintiff and other similarly situated caregiver employees usually worked twenty-four (24) hour shifts in a single day, at least three and up to five days per week.

49.     Plaintiff and other similarly situated caregiver employees were unlawfully paid "flat rates" for a twenty-four (24) hour shift in a single day that amounted to an hourly rate well below the required federal minimum wage.

50.     Because Defendants unlawfully deducted sleep time from Plaintiff's and similarly situated caregiver employees' time in a twenty-four (24) hour shift, Plaintiff was paid well below the required federal minimum wage.

51.     Defendants' policy for payment was variable depending upon the hours scheduled and number of residents.  For example, Plaintiff was informed that the rate for paying Plaintiff and similarly situated employees was based on (1) the number of hours scheduled and (2) the number of residents.  The quoted rate ranged from $200-$240 for a 24-hour shift.  If scheduled less than 24 hours, then the rate was to be $10.50.

52.     However, the pay stubs received by Plaintiff and other similarly situated caregiver employees of Defendants were incorrect.  For example, Plaintiff's rate of pay ranged from a base rate of $8.00 to sometimes $12.75, with the overtime rate being similarly discordant.  In addition, the hours reported on the pay stub and thus used as a calculation for overtime did not capture the full amount of time Plaintiff worked.

53.     Plaintiff and other similarly situated employees would be scheduled for three (3) consecutive 24 shifts for a total of 72 hours in one week and then the next week would be scheduled for four (4) consecutive 24 shifts for a total of 96 hours in the second week. Plaintiff was not properly paid for this overtime, nor did her pay stub reflect the amount of actual hours worked and overtime compensation to be received.

54.     Furthermore, the pay stubs received by Plaintiff and other similarly situated caregiver employees of Defendants were deceptive, in that the number of daily shifts worked in a week was shown as "Hours," rather than shifts, so that it appeared that Plaintiffs and other similarly situated caregiver employees were paid a higher hourly rate than in fact they were paid.  For example, Plaintiff's pay stub for the pay period from August 18, 2019 to August 31, 2019 states that her hours were a combination of 80.9 and her rates of pay are $8.25 and $12.375 respectively, obscuring the fact that her actual pay was below the federal minimum wage.

55. In addition, there was a bonus included on some pay stubs and not others. The basis for the bonus is unclear and it is unable to determine the rate of pay for the bonus.

56. Despite having a bonus included on various pay stubs, Defendants did not calculate overtime bonus premiums as required by the FLSA.

57. At all relevant times, Defendants knew that their caregiver employees were not being paid minimum wage for every hour worked thereby willfully violating federal and North Carolina wage and hour laws.

58. The FLSA is a "suffer or permit" statute, providing that employers may neither force nor allow employees to work in violation of federal minimum wage and overtime compensation requirements. By failing to provide any mechanism or method for Plaintiffs to report the time spent sleeping while on duty, Defendants violated the provisions of FLSA that do not allow employers to "suffer or permit" employees to work in violation of federal minimum wage and overtime compensation requirements.

59. Plaintiffs and other similarly situated caregiver employees worked well in excess of forty (40) hours in many individual work weeks.

60. If Plaintiffs and other similarly situated caregiver employees worked only two twenty-four (24) shifts in a week, and for the reasons alleged and set forth above, all hours spent on duty, including time spent sleeping, is counted as work time, the Plaintiffs and other similarly situated caregiver employees worked forty-eight (48) hours in that week. In fact, Plaintiffs and other similarly situated caregiver employees usually worked at least three and sometimes four 24-hour shifts in a week, well above the forty-hour (40) threshold for payment of federal and state overtime wages.

61. At all relevant times, Defendants knew that their caregiver employees routinely worked in excess of forty (40) hours per individual work week. Nonetheless, Defendants knowingly and willfully failed to pay Plaintiff and their similarly situated caregiver employees overtime wages for all hours worked in excess of forty (40) hours during individual work weeks, as required by federal and North Carolina wage and hour laws.

62. Defendants benefitted from their unlawful failure to pay Plaintiff and other similarly situated caregiver employee minimum wages and overtime pay to which they were entitled, because Defendants reaped more profit from the deceptive scheme.

63. Plaintiff and other similarly situated caregiver employees were all subject to Defendants' uniform policies and practices and were victims of Defendants' schemes to deprive them of minimum wages and overtime pay. As a result of Defendants' knowing and willful failure to pay Plaintiffs and other similarly situated caregiver employees in accordance with the requirements of federal and North Carolina wage and hour law, Plaintiff and other similarly situated caregiver employees suffered lost wages and other damages.

## COLLECTIVE ACTION ALLEGATIONS

64. This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and attorneys' fees and costs.

65. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring their First and Second Causes of action, FLSA claims, on behalf of themselves, individually, and all others similarly situated caregiver employees who work or have worked for Defendants who elect to opt-in to this action ("Opt-in Plaintiffs).

66. The FLSA § 216(b) collective action class is properly defined as:

13

**All current and former employees of Defendants who work or have worked for Defendants as designated caregivers anytime during the three-year period preceding the filing of the Complaint in this action.**

67.     Consistent with Defendants' policy and pattern or practice, Plaintiff has not been paid minimum wage for all hours worked and Plaintiff and Opt-in Plaintiffs have not been paid premium overtime compensation for all hours worked beyond a forty (40) hour workweek.

68.     All of the work that Plaintiff and Opt-in Plaintiffs have performed has been assigned by Defendants, and/or Defendants have been aware of all the work that Plaintiffs and Opt-in Plaintiffs have performed.

69.     As part of its regular business practice, Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and Opt-in Plaintiffs. This policy and pattern and practice includes, but is not limited to:

a.  willfully failing to pay its caregiver employees, including Plaintiff and Opt-In Plaintiffs, minimum wages for all hours worked and premium overtime wages for all hours worked in excess of forty (40) hours per workweek; and

b.  willfully failing to pay and record all of the time that its in-home caregiver employees, including Plaintiff and Opt-In Plaintiffs, have worked for the benefit of Defendants.

70.     Defendants are aware or should have been aware that federal law required them to pay their in-home caregiver employees minimum wages for all hours worked and overtime premiums for all hours worked in excess of forty (40) per workweek.

14

71.     Plaintiff and Opt-in Plaintiffs perform or performed the same basic job duties, were subject to the same employment policies, practices and procedures, and have been subject to the same unlawful practices alleged herein.

72.     Defendants' policy and practice of paying sub-minimum wages as described above was applicable to and affected all of Defendants' in-home caregiver employees.

73.     Defendants' policy and practice of failing to pay overtime wages for all hours worked in excess of forty (40) in a workweek as described above was applicable to and affected all of Defendants' in-home caregiver employees.

74.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

75.     There are many similarly situated current and former hourly employees of Defendants who have been denied minimum wages and overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the Opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b).

76.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

77.     Plaintiff requests that she be permitted to serve as representatives of those who consent to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. § 216(b).


## CLASS ACTION ALLEGATIONS

78.     This action is maintainable as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and pursuant to NCWHA, N.C. Gen. Stat. §§ 95-25.6,

15

95-25.7 and 95-25.13 for failure to pay promised and earned wages for all hours worked by Plaintiff and members of the proposed class.

79. Plaintiff proposes the same class for purposes of certification under Rule 23 as under § 216(b) of the FLSA, with the exception that the class period for this state law cause of action is two years from the date of the filing of this Complaint. The proposed class is easily ascertainable. The number and identity of NCWHA class members are determinable from Defendants' payroll records or records over which they have control, as are the hours assigned and worked, the positions held, and the rates of pay for each class member.

80. The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class is comprised of at least 50 persons.

81. There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class in that Plaintiff and all members of the proposed class have been harmed by Defendants' failure to pay earned wages. The common questions of law and fact include, but are not limited to the following:

(a) whether Defendants refused to pay Plaintiff and members of the proposed class promised and earned regular wages and overtime wages for all hours worked on their regular pay day in violation of NCWHA §§ 95-25.6, 95-25.7 and 95-25.13; and

(b) whether Defendants' refusal to pay such compensation is in violation of NCWHA.

82.     The claims of Plaintiff are typical of those claims that could be alleged by any Putative Class Member and the relief sought is typical of the relief that would be sought by each member of the class in separate actions.  All class members were subject to the same compensation practices of Defendants; i.e. refusing to timely pay promised and earned wages. The compensation policies and practices of Defendants affected all class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each class member.  Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

83.     Plaintiff is able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and members of the proposed class.  Plaintiff has retained counsel who is experienced and competent in both wage and hour and complex class action litigation.

84.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Because the loss, injuries, and damages suffered by each of the individual class members are modest, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

85.     Important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public for adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action.

Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## COUNT I

### (Violation of Fair Labor Standards Act – Minimum Wages Collective Action)

86.     Plaintiffs, on behalf of herself, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

87.     Count I arises from Defendants' violation of the FLSA, for its failure to pay all minimum wages earned by Plaintiffs and other similarly situated employees.

88.     Defendants violated the FLSA by paying Plaintiff and other similarly situated employees daily "flat rates," that when calculated based upon actual hours worked as set forth above, resulted in actual pay well below the required minimum wage.

89.     Defendants violated the FLSA by failing to keep, make and preserve accurate records of all time worked by Plaintiff and similarly situated employees.

90.     Defendants knew or acted in reckless disregard that its compensation practices violated the FLSA.

91.     Defendants' violation of the FLSA was willful.

## COUNT II

### (Violation of Fair Labor Standards Act – Overtime Collective Action)

92.     Plaintiffs, on behalf of herself, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

93.     Count II arises from Defendants' violation of the FLSA, for its failure to pay all overtime wages earned by Plaintiffs and other similarly situated employees.

94.     Defendants violated the FLSA by failing to pay Plaintiffs and other similarly situated employees one and one-half times their lawfully calculated regular rate of pay for all hours worked in excess of forty (40) in one or more individual workweeks.

95.     Defendants violated the FLSA by failing to keep, make and preserve accurate records of all time worked by Plaintiff and similarly situated employees.

96.     Defendants knew or acted in reckless disregard that its compensation practices violated the FLSA.

97.     Defendants' violation of the FLSA was willful.

## COUNT III

### (Violation of North Carolina Wage and Hour Act)

98.     Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

99.     Count III arises from Defendants' policy and practice of suffering or permitting Plaintiff and other similarly situated hourly employees to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

100. Defendants violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiffs and similarly situated hourly employees all promised and earned wages and overtime payments on the employees' regular payday for all hours worked.

101. Defendants further violated N.C. Gen. Stat. §§ 95-25.7 by failing to pay Plaintiffs their earned wages on the next regular payday following the separation of their employment.

102. Defendants' violation of the NCWHA was willful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and all employees similarly situated who join this action demand and pray for:

a) This Court to Order the Defendants to file with this Court and furnish to counsel for Plaintiff a list of all names, telephone numbers, home addresses and email addresses of all caregiver employees who have worked for Defendant within the last three years;

b) This Court to authorize Plaintiff's counsel to issue notice at the earliest possible time to caregiver employees who have worked for Defendant within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of minimum wages and overtime compensation, as required by the FLSA;

c) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined in the suit);

d) An Order certifying this action as a class action under the NCWHA and designating the above Plaintiff as representatives on behalf of all those similarly situated caregiver employees;

e) An Order pursuant to the NCWHA finding Defendant liable for unpaid back wages and liquidated damages equal in amount to the unpaid compensation due to Plaintiffs and the class;

f) An Order awarding the costs of this action;

g) An Order awarding reasonable attorneys' fees;

h) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage and overtime requirements of the FLSA;

i) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

j) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiff and Putative Class Members*

21