UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte DIVISION
DOCKET NO. 3:20-cv-00137-FDW-DCK

| | |
|---|---|
| ANITA MOSS, on behalf of herself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SENIOR CARE CAROLINAS, PLLC, )<br>INNOVATIVE HEALTHCARE )<br>MANAGEMENT, LLC, & MELISSA )<br>LYNCH. )<br>)<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for Conditional Certification Pursuant to the Fair Labor Standards Act (Doc. No. 9) and Court-Authorized Notice to be Issued under 29 U.S.C. § 216(B) (Doc. No. 9). Defendant responded to the motion, (Doc. No. 12), Plaintiff replied, (Doc. No. 13), and this motion is now ripe for review.

## I. BACKGROUND

Plaintiff, Anita Moss, filed her initial complaint with this Court on March 04, 2020. (Doc. No. 1). Plaintiff filed an amended complaint on May 19, 2020. (Doc. No. 7). Plaintiff alleges, on behalf of herself and others similarly situated, Senior Care Carolinas, PLLC ("Senior Care"), Innovative Healthcare Management, LLC ("Innovative"), and Melissa Lynch (collectively "Defendants") violated the Fair Labor Standards Act ("FLSA"), the North Carolina Wage and Hour Act ("NCWHA"), and Title VII of the Civil Rights Act of 1964. Id. at 1.[1]

---

[1] Plaintiff also requested class certification under Rule 23 for her NCWHA and Title VII claims, but she has not submitted a motion or otherwise made argument in support of Rule 23 class certification.

1

According to the Amended Complaint, Plaintiff alleges, "Defendant Lynch is the originating manager of Innovative which operates Senior Care." Id. at 3. Senior Care has five homes throughout North Carolina, which house two to six elderly or infirmed residents. Id. at 7. Plaintiff worked as a dedicated care official for Defendants at a Senior Care facility from November 2017 to August 28, 2019. Id. at 2. Dedicated care officials are non-exempt hourly employees. Id. at 7. Plaintiff's job duties included: light housekeeping; meal preparation; getting and sending mail; laundry and ironing; linen washing and bed making; companionship care; medication management; bathroom assistance; incontinence care; hygiene assistance; assisting with dressing residents; mobility, safety, and ambulation assistance; charting; and organizing activities. Id. at 8-9.

The Amended Complaint also asserts Plaintiff was scheduled by Defendants for shifts of 24 hours three to five times a week, sometimes on consecutive days. Id. at 12. Plaintiff alleges she and those similarly situated often worked weeks "well in excess of forty (40) hours." Id. at 14. Plaintiff contends she was required by Defendants to stay at her job location until the next scheduled employee arrived to relieve her at the end of her shifts. Id. at 10.

While on these shifts, Plaintiff was permitted to sleep but Defendants allegedly did not provide a mechanism to clock-in and clock-out or provide furnished sleeping facilities as required by the FLSA. Id. at 9. Plaintiff alleges during "at least half and usually more than half" of her shifts she was unable to get a consecutive 5 hours of "uninterrupted" sleep, as required by the FLSA, due to resident's needs. Id. at 10-11. Further, Plaintiff alleges Defendants knew of these around-the-clock needs that would disrupt Plaintiff's sleep, but still deducted sleep time from Plaintiff's hours worked without a written agreement to deduct sleep time. Id. at 10.

2

In regards to pay, Plaintiff alleges Defendants paid Plaintiff and those similarly situated a flat rate for twenty-four hour shifts, which fell below the federal minimum wage. Id. at 12. Also, Plaintiff contends that Defendant's practice of deducting sleep time without a written agreement caused her pay to fall below the federal minimum wage. Id. at 11. Additionally, Plaintiff alleges she was not correctly paid overtime for weeks where she worked over forty hours and "Defendants did not calculate overtime bonus premiums as required by the FLSA." Id. at 7 & 13.

Plaintiff later filed a Charge of Discrimination against Defendants with the United States Equal Employment Opportunity Commission ("EEOC"), where she alleged "discrimination, harassment, and/or retaliation." Id. at 7. Plaintiff received a right to sue letter on March 27, 2020. Id.

In Plaintiff's amended complaint, she alleges that she was discriminated on the basis of her race and subjected to harassment and retaliation due to her race. Id. at 8. Further, Plaintiff states Defendant Lynch hires African Americans because "they are 'too dumb' to understand how they are supposed to be paid and what benefits they are entitled to and are getting." Id. Also, Plaintiff alleges Defendant Lynch believes she is able to keep payroll costs down because African American employees are "too dumb" to understand their payroll or pay stubs. Id. Lastly, Plaintiff asserts Defendant Lynch spoke down to African American employees and refused to help or provide clarification regarding scheduling, time off, and payroll. Id. Following receipt of a Right to Sue letter from the EEOC, Plaintiff filed the instant action.

## II. CONDITIONAL CERTIFICATION UNDER 29 U.S.C. § 216(b)

Plaintiff seeks conditional certification and authorization to send court-supervised notice under the FLSA, 29 U.S.C. § 216(b), for the following class: [a]ll current and former employees of Defendants who work or have worked for Defendants as designated caregivers anytime during

3

the three-year period preceding the filing of the Complaint in this action. (Doc. No. 7, p. 15; Doc. No. 11, p. 15).

Plaintiff states, on behalf of herself and others similarly situated, that Defendants have "willfully and repeatedly engaged in a pattern, practice, and/or policy" of violating the FLSA by failing to pay caregiver employees "minimum wages for all hours worked and premium overtime wages for all hours worked in excess of forty (40) hours per workweek" and "failing to pay and record all of the time that its in-home caregiver employees . . . have worked." (Doc. No. 7, p. 16). Plaintiff argues that herself and the alleged collective are similarly situated because

> (1) they perform substantially similar job duties; (2) they are subject to the same unlawful sleep time deductions; (3) they were not paid overtime wages for all hours worked exceeding 40 hours in a work week; and (4) they are otherwise subject to the same unlawful wage and hour policies and practices, specifically, Defendants' failure to pay all hours worked and/or failure to pay overtime.

Id. at 7. Defendants disagree and argue some potential members of the collective have waived claims due to a Department of Labor ("DOL") Agreement, therefore foreclosing the possibility that Plaintiff can demonstrate the collective is similarly situated. According to Defendant, the notice is misleading and overbroad. (Doc. No. 12, pp. 2-14).

The FLSA "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). Pursuant to section 216(b), "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of [herself] or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "[U]nlike in a class action filed pursuant to Federal Rule of Civil Procedure 23 or a comparable state court rule, in a collective action under the FLSA, a named plaintiff represents only [herself] until a similarly-situated employee opts in as a 'party plaintiff' by giving

4

'his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 758 (4th Cir. 2011) (quoting 29 U.S.C. § 216(b)). Under the FLSA, a district court may exercise its discretion and, in appropriate cases, certify an action as a "collective action" and facilitate notice of the suit to a putative class of potential plaintiffs. Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989); Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 771 (D. Md. 2008).

Certification of a collective action is a two-stage process. Pelczynski v. Orange Lake Country Club, Inc., 284 F.R.D. 364, 367 (D.S.C. 2012). "First, a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" that they can "opt-in" to the collective action. Id. at 367–68. To proceed as a collective action at this stage, plaintiffs need only make "a modest factual showing" that they were victims of a common policy or practice that violated the FLSA. Essame v. SSC Laurel Operating Co., 847 F. Supp. 2d 821, 825 (D. Md. 2012). At the notice stage, the court "does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Solais v. Vesuvio's II Pizza & Grill, Inc., No. 1:15-cv-227, 2016 WL 1057038, at *6 (M.D.N.C. Mar. 14, 2016) (citation omitted). A plaintiff may rely on "affidavits or other means," such as declarations and deposition testimony, to show that a class of "similarly situated" plaintiffs exist. Williams v. Long, 585 F. Supp. 2d 679, 684–85 (D. Md. 2008) (concluding that declarations would alone suffice to meet the initial threshold for conditional certification a of collective action). This showing must consist of more than "vague allegations" with "meager factual support," but it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists. Mancía

v. Mayflower Textile Servs. Co., No. CCB–08–273, 2008 WL 4735344, at *2 (D. Md. Oct.14, 2008) (citing D'Anna v. M/A–COM, Inc., 903 F. Supp. 889, 893 (D. Md. 1995)).

Second, after the court has conditionally certified the collective, potential members of the collective have been identified and notified, and discovery has been completed, a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief. Pelczynski, 284 F.R.D. at 368 (citation omitted). At this "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. Steinberg v. TQ Logistics, Inc., No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *2 (D.S.C. Apr. 7, 2011).

In the present case, Defendants first argue an agreement entered on January 27, 2020 between Senior Care and the DOL resulted in waiver of some potential opt-in plaintiff's claims. (Doc. No. 12, p. 2). While the 4th Circuit has not addressed the issue of whether an employee agreeing to funds from an employer and subsequently cashing a check for wages results in waiver of FLSA rights, other courts in this circuit have determined that an employee must be on notice of the potential waiver and "agreement is more than the acceptance of funds, as it must exist independent of payment." See Jones v. Midlands Neurology & Pain Associates, P.A., No. 3:11-2623-CMC-SVH, 2013 WL 5934509, at *5 (D.S.C. Sept. 20, 2013) (citing Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1146 (9th Cir. 2007)) (internal quotations omitted). "Typically an employee manifests assent by signing a receipt (either the standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1147 (9th Cir. 2007).

6

Here, Defendants state that the DOL audited Senior Care's payment practices, which resulted in an agreement to pay "certain affected employees" and accepted payment by these aforementioned employees amounts to waiver of "their rights to pursue a private right of action for owed wages" pursuant to 29 U.S.C. § 216(c). (Doc. No. 12, p. 2). However, Defendants present no evidence at this stage as to whether these affected employees were noticed by a WH-58 or similar form that their FLSA rights would be waived upon cashing the checks. At this step of the certification process, the Court declines to address the merits of this argument. This argument is better suited for the second step of the certification process, after the completion of discovery when the evidentiary record will be more fully developed.

The parties also disagree as to whether the members of the collective that Plaintiff seeks to certify are similarly situated. Plaintiff argues that under the modest notice standard, she has demonstrated that she is similarly situated to the other potential plaintiffs. (Doc. No. 10, p. 8). Defendant argues Plaintiff has not demonstrated she is similarly situated because she has only alleged "broad generalizations" and "individualized inquiries" are necessary for many potential opt-in plaintiffs. (Doc. No. 12, pp. 3-8).

During the "notice stage" of class certification, "the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing he is similarly situated to the proposed class members." Graham v. Hall's Southern Kitchens, LLC, 331 F.R.D. 619, 621 (D.S.C. 2018). The more lenient standard, requiring only "minimal evidence," is applied to determine if the plaintiff is similarly situated to the class where "substantial discovery remains." See Myers v. Loomis Armored US, LLC, No. 3:18-cv-00532-FDW-DSC, 2019 WL 3338172, at *3 (W.D.N.C. July 25, 2019) ("Where substantial discovery remains, courts typically apply the more lenient standard applicable at the first step."). Moreover, individualized inquiries do not

7

preclude conditional certification. See Id. at *4 ("The fact that plaintiffs might be exempt from the FLSA due to the Motor Carrier Act ("MCA"), and that the application of the MCA exemption might require an individualized inquiry, does not preclude conditional certification."); see also Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 747 (E.D.N.C. 2017) ("[E]ven if potential plaintiff's circumstances are not identical, conditional certification is appropriate where persons 'raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting.'").

Here, since substantial discovery remains, the Court finds it appropriate to apply the lenient standard. Plaintiff clearly alleges in her amended complaint (Doc. No. 7), supplemental brief (Doc. No. 10), and declaration (Doc. No. 10-1) that all dedicated care official employees have the same job duties, are non-exempt hourly workers, were required to work twenty-four hour shifts, frequently worked forty hours or more in one work week, were subject to the same policy of deducting sleep time from hours worked without a written agreement, were not provided sleeping facilities, and were not correctly paid overtime. (Doc. No. 1, pp. 7-12; Doc. No. 7, pp. 8-13; Doc No. 10, p. 7; Doc. No. 10-1, pp. 1-5). Plaintiff has therefore proffered minimal evidence, as required by the lenient standard, to show that she is similarly situated to the proposed collective. Defendant's arguments that Plaintiff provided vague allegations with meager factual support is unfounded based on the pleadings and declaration. (Doc. No. 12, pp. 3-4). Further, Defendant's argument that individualized factual inquiries are necessary for some potential opt-in plaintiffs due to differences in, *inter alia*, scheduling, their work location, and required overtime is not enough to thwart conditional certification at this stage. (Doc. No. 12, p. 7). Thus, the Court will conditionally certify the collective.

### III. NOTICE

Defendant challenges various portions of the notice (Doc. No. 9-1) submitted by the Plaintiff, construing these portions as "misleading and overbroad." (Doc. No. 12, p. 8). "District courts have wide discretion in facilitating notice to potential claimants." Danford v. Lowe's Home Centers, LLC, No. 5:19-CV-00041-KDB-DCK, 2019 WL 4874823, at *3 (W.D.N.C. Oct. 2, 2019) (citing Hoffman-La Roche Inc. v. Sperling, 110 S. Ct. 482 (1989)). This discretion involves "altering the content of the notice." Id.

A. Proper Opt-in Period

Defendants argue, relying on Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369 (E.D.N.Y. 2008), the notice period should run from the "date the notice is sent and three years prior to that date." (Doc. No. 12, p. 9). However, "because equitably tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." See Vance v. Cuarto LLC, No. 6:14-CV-00777, 2014 WL 12646033, at *4 (D. Or. Oct. 6, 2014) (declining to follow Doucoure in the interest of promoting judicial economy to certify a larger class). Therefore, the notice period beginning on March 4, 2017, to present on the notice proposed by Plaintiff can remain as-is.

B. Collective Definition

Defendant argues the language in the notice addressing all "hourly employees" is too broad, and the Court agrees. (Doc. No. 12, p. 9). The collective definition in the notice should be changed to reflect the language of the group Plaintiff has moved to certify. The notice is made too broad by simply addressing "all hourly employees," which may include employees who are not dedicated caregivers. Thus, the notice should be changed to read: "All current and former

9

employees of Senior Care Carolinas, PLLC and/or Innovative Healthcare Management, LLC who work or have worked as designated caregivers from March 4, 2017, to present."

C. Attorney's Fees and Discovery Obligations

Defendants argue that the notice should make clear the possibility of opt-in plaintiffs may have to pay Defendant's attorney's fees if Plaintiff is unsuccessful and state the role opt-in plaintiffs play in discovery. (Doc. No. 12, pp. 9-10). The Court agrees. "The proposed notice is somewhat misleading because it gives absolutely no notice to potential opt in plaintiffs that they could be required to participate in the litigation, or that they could be responsible for a portion of Defendants' costs if Plaintiffs' are unsuccessful." Robbins v. Blazin Wings, Inc., No. 15-CV-6340-CJS, 2016 WL 1068201, at *7 (W.D.N.Y. Mar. 18, 2016). The purpose of adding language into the notice about the potential for opt-in plaintiffs to pay Defendants' attorney's fees and their role in discovery is to ensure that each individual is fully informed. Therefore, in the notice under section "V. EFFECT OF JOINING THIS LAWSUIT" a sentence should be added to read: Should Plaintiffs be unsuccessful, all opt-in plaintiffs may have to pay a pro-rata share of Defendant's attorney's fees. Additionally, under this same section, another sentence should be added to read: "Opt-in plaintiffs may be required to participate in the discovery process by producing documents, participating in oral depositions, and testifying at a hearing or trial."

D. Defendant's Position

Defendants argue that a description of their position is required in the Notice to ensure fairness and accuracy. (Doc. No. 12, p. 11). The Court will allow a short sentence or two disclaiming that Defendants deny any liability, but any further description is unnecessary for adequate notice. See, e.g, Danford v. Lowes Home Centers, LLC, No. 5:19-CV-00041-KDB-DCK, 2019 WL 4874823, at *8 (W.D.N.C. Oct. 2, 2019) (stating "Lowe's contests all claims that

10

have been asserted and denies any wrongdoing or liability" in attached Notice to court opinion). Counsel is instructed to confer and agree to the appropriate language to make clear their position denying liability.

E. DOL Agreement

As previously mentioned, the Court declines to address the alleged DOL Agreement until further discovery by the parties. Therefore, nothing should be added to the notice about the DOL Agreement at this time.

F. Length of Opt-In Period

Defendants argue the notice does not limit the opt-in period to 30 days, but acknowledges that a period between 30-60 days is permissible. (Doc. No. 12, p. 12). Plaintiff suggests a 60-day period for opt-in plaintiffs. (Doc. No. 13, p. 11). The Court will allow a 60-day opt in period. See e.g., Geiger v. H.H. Franchising Sys., Inc., No. 3-17-CV-00738, 2018 WL 10689465, at *2 (W.D.N.C. Nov. 27, 2018) (approving a 60-day opt-in period). However, this 60-day period should be made explicit in section "IV. YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT" by adding a sentence stating: "You have 60 days to respond to this Notice should you decide to participate in the lawsuit."

G. Posting and Email Notification

Defendants object to Plaintiff's requests to post the Notice at work-site locations and disseminate the Notice through email. (Doc. No. 12, pp. 12-13). However, this Court has approved posting Notices at places of employments on numerous occasions. See Edwin v. Jiasheng, Inc., No. 3:19-CV-306-MOC-DSC, 2019 WL 697454, at *3 (W.D.N.C. Feb. 11, 2019) (ordering Defendant to post a Notice at employment location where it is easily viewable by employees); Rehberg v. Flowers Foods, Inc., No. 3:12-CV-596, 2013 WL 1190290, at *3

(W.D.N.C. Mar. 22, 2013) (same); Klakulak v. Americahomekey, Inc., No. 3:11-CV-388-MOC, 2012 WL 13194972, at *2 (W.D.N.C. Mar. 1, 2012) (same). Additionally, distributing collective action Notices via email is a regular practice for this Court. See Jahagirdar v. Computer Haus NC, Inc., No. 1:20-CV-0033, 2020 WL 1876061, at *3 (W.D.N.C. Apr. 15, 2020) (approving notice sent to potential opt-in plaintiffs by email); Danford, 2019 WL 4874823, at *8 (same); Chavez v. T&B Mgmt., LLC, No. 1:16-CV-1019, 2018 WL 4398361, at *7 (W.D.N.C. Sept. 14, 2018) (same). Therefore, Plaintiff's request to disseminate the notice by First-Class US Mail with a postage-paid return envelope and email are approved. (Doc. No. 9, p. 2).

    H. Disclosure of Information

Defendants object to Plaintiff's request to provide potential opt-in plaintiff's dates of employment, Social Security numbers, telephone numbers, email addresses, and dates of birth in "computer-readable" format as being overly burdensome. (Doc. No. 12, pp. 13-14). "While courts have routinely approved requests for . . . email addresses, court have been more reluctant to authorize the disclosure of other private information, such as telephone numbers" absent a special showing. See Chavez, 2018 WL 4398361, at *6 (approving names, addresses, and email addresses of potential opt-in plaintiffs be sent to Plaintiff in "electronically readable/importable form"). Here, Plaintiff has alleged no special reason for requiring telephone numbers, Social Security numbers, and dates of birth. Absent this special showing, and in an effort to protect the privacy of potential opt-in plaintiffs, the Court denies Plaintiff's request for telephone numbers, Social Security numbers, and dates of birth. However, Defendant is required to submit to Plaintiff the names, addresses, dates of employment, and email addresses of potential opt-in plaintiffs in a "computer readable format."

## IV. CONCLUSION

IT IS THEREFORE ORDERED:

1. Plaintiff's motion for collective action certification is GRANTED on the terms set forth herein.

2. The case shall proceed with respect to the FLSA claims as a collective action under 29 U.S.C. § 216(b).

3. For purposes of Plaintiff's FLSA claim, the collective is defined as follows:

    All current and former employees of Defendants who work or have worked for Defendants as designated caregivers anytime during the three-year period preceding the filing of the Complaint in this action.

4. Pursuant to Fed. R. Civ. P. 23(g), Plaintiff's counsel shall serve as counsel for the collective.

5. Defendant shall provide Named Plaintiff's counsel the last known names, addresses, dates of employment, and email addresses of potential opt-in plaintiffs in a computer readable format of all putative collective who worked for Defendant at any time from March 4, 2017, to present within fourteen (14) days of this Order.

IT IS SO ORDERED.

Signed: June 24, 2020

Frank D. Whitney
United States District Judge