UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-0137

| | |
|---|---|
| ANITA MOSS *on behalf of herself and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>SENIOR CARE CAROLINAS, PLLC, INNOVATIVE HEALTHCARE MANAGEMENT, LLC and MELISSA LYNCH,<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY NCWHA AND TITLE VII CLASS UNDER RULE 23 AND FOR APPOINTMENT OF CLASS COUNSEL** |

**I. INTRODUCTION AND BOTTOM LINE UP FRONT**

Plaintiff Anita Moss ("Moss"), on behalf of herself and all others similarly situated, brings this action and moves for class certification under Federal Rules of Civil Procedure, Rule 23, on the grounds that she and others similarly situated were subjected to unlawful pay practices of their joint employers, Senior Care Carolinas, PLLC, Innovative Healthcare Management, LLC and Melissa Lynch (collectively "Defendants") in violation of North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 *et seq*. ("NCWHA Class") This Court previously granted Moss's motion for conditional certification of a collective action based on violations of the FLSA. [ECF No. 15] Notice went out to 43 members of the FLSA Collective and in addition to Named Plaintiff Moss, 13 individuals opted into this action for purposes of asserting their rights under the FLSA. [ECF Nos. 5, 16-17, 19-25, 27, 29-30 ] Of the 43 Notices, 10 were returned undeliverable and 2 individuals chose not to opt in to the FLSA Collective.

Plaintiff Moss and the putative NCWHA Class Members are home health care workers who were systematically not paid as promised in their written contracts, were not paid for all hours worked, were unlawfully paid flat-rates, who were not provided adequate sleeping arrangements, yet were subjected to unlawful and unauthorized automatic 8-hour sleep-time deductions, who were subjected to automatic 8-hour sleep-time deductions even when they did not get at least five hours of uninterrupted sleep; who were not paid for time when sleep was interrupted; who were not paid overtime wages for all hours over 40 hours in a workweek, and who were not paid overtime bonus premiums. The NCWHA Class should be certified because Plaintiff Moss and others are class members of the NCWHA Class she has defined; Plaintiff Moss can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), the additional requirements of Rule 23(b)(3) and she is an adequate representatives of the NCWHA Class.

Plaintiff Moss, on behalf of herself and others similarly situated also brings this action and moves for Rule 23 class certification on the grounds that Defendants subjected them to race discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§2000e et seq. ("Title VII Class"). Moss and the Title VII Class Members are employees of Defendants who are African American and suffered discrimination, harassment and retaliation on the basis of race in violation of Title VII.

As such, Moss, on behalf of herself and all others similarly situated, through her undersigned attorney, hereby moves for the following relief: (1) certification of this action as a class action under Rule 23(a) and (b)(3) for the North Carolina Wage and Hour Act claims; (2) certification of this action as a class action under Rule 23(a) and (b)(3) for the race

discrimination claims; (3) appointing named Named Plaintiff Moss as class representative for both Classes; and (4) appointing L. Michelle Gessner at GessnerLaw, PLLC as class counsel.

## II. FACTS

### A. Facts alleged in First Amended Complaint.

Plaintiff Moss filed the original Complaint on March 4. 2020. [ECF No. 1]. She filed the First Amended Complaint on May 19, 2020. [ECF No. 7]. The FAC alleges that Defendant Senior Care Carolinas, PLLC, Innovative Healthcare Management, LLC and Melissa Lynch ("Defendants") is a North Carolina corporation, [*Id.* at ¶ 4.] Defendants control and/or own and/or operate senior living centers, with at least five current sites throughout North Carolina. [*Id.* at ¶ 4.] Each site can have between 2-6 residents. [*Id.* at ¶ 32.] Defendants employ non-exempt hourly employees with various titles but who are recognized as dedicated care officials. [*Id.* at ¶ 33.] Defendants contract with families and individuals to place their family members at one of their facilities to provide companion care services to the elderly and/or infirmed. [*Id.* at ¶ 35.] Plaintiff was employed by Defendants from November 2017 continuing through August 28, 2019. Her job duties included: light housekeeping; meal preparation and feeding; getting and sending mail; laundry and ironing; linen washing and bed making; companionship care; dispensing medications; bathroom assistance and incontinence care; hygiene assistance; dressing assistance; mobility and safety; charting; and organizing activities. [*Id.*, at ¶¶ 35 and 42.]

Defendants scheduled the shifts and Plaintiff was often required to work 24-hour shifts, many times on consecutive days. Plaintiff was required to remain onsite with the clients until another employee relieved them from their assignment. [*Id.* at ¶ 45.] If Plaintiff's scheduled shift ended and a relief caregiver employee was not present, Defendants required the on-duty

3

caregiver employee to stay at their assigned site past their scheduled shift until another caregiver employee arrived to relieve them from their assignment. [*Id.* at ¶ 46.]

While Defendants purported to allow Plaintiff employees to sleep during their shifts, there was no reasonable agreement to exclude sleep time. [*Id.* at ¶ 48.] Plaintiff was not provided with adequate sleeping facilities, because she was required to stay near the clients instead of in a separate, adequate sleeping facility. [*Id.* at ¶ 49.] Plaintiff did not "usually get an uninterrupted night's sleep" within the meaning of the regulations implementing the FLSA, because the clients' interruptions that prevented Plaintiff from getting five consecutive uninterrupted hours of sleep occurred at least half and usually more than half of the Plaintiff's shifts. [*Id.* at ¶ 50.] Defendants knew that the clients required around the clock care, for bathroom and incontinence care, and the prevention of slip and falls and providing other safety precautions; these were the part of the essential job duties of the Plaintiffs and other similarly situated caregiver employees. [*Id.* at ¶ 51.] Defendants knew that the inability to obtain five hours of uninterrupted sleep was inherent in the job of Plaintiffs and other similarly situated caregiver employees because of the essential job duties and Defendants' expectations for care provided to each and every client. [*Id.* at ¶ 52.] Defendants knew that the clients' needs and the essential job duties required of Plaintiff and similarly situated caregiver employees, to care for the clients' bathroom and incontinence needs and prevent falls, prevented the Plaintiff and similarly situated caregiver employees from obtaining five hours of uninterrupted sleep time, and yet Defendants knowingly and willfully deducted sleep time from the Plaintiffs' and similarly situated caregiver employees' calculation of hours worked. [*Id.* at ¶ 53.]

Named Plaintiff and the NCWHA Class usually worked twenty-four (24) hour shifts in a single day, at least three and up to five days per week. [*Id.* at ¶ 57.] They were unlawfully paid

"flat rates" for a twenty-four (24) hour shift in a single day that amounted to an hourly rate well below the required federal minimum wage. [*Id.* at ¶ 58.] Defendants had a centralized policy of automatically deducting 8 hours of sleep time. Because Defendants unlawfully deducted sleep time from Plaintiff's time in a twenty-four (24) hour shift, Plaintiff was paid well below the required federal minimum wage. [*Id.* at ¶ 59.]

Throughout her employment with Defendants, Plaintiff received bi-weekly paychecks that did not properly record or compensate her for all the hours that she worked. [*Id.* at ¶¶ 60-61.] Throughout her employment with Defendants, Plaintiff was not paid overtime wages earned for all hours worked and was not paid premium overtime compensation for all hours worked beyond 40 per workweek. [*Id.* at ¶¶ 62-63.] Furthermore, the pay stubs received by Plaintiff and other similarly situated caregiver employees of Defendants were deceptive, in that the number of daily shifts worked in a week was shown as "Hours," rather than shifts, so that it appeared that Plaintiffs and other similarly situated caregiver employees were paid a higher hourly rate than in fact they were paid. [*Id.* at ¶ 63.] For example, Plaintiff's pay stub for the pay period from August 18, 2019 to August 31, 2019 states that her hours were a combination of 80.9 and her rates of pay are $8.25 and $12.375 respectively, obscuring the fact that her actual pay was below the federal minimum wage. [*Id.* at ¶¶ 63.] In addition, there was a bonus included on some pay stubs and not others. The basis for the bonus is unclear and it is unable to determine the rate of pay for the bonus. [*Id.* at ¶¶ 64.] Despite having a bonus included on various pay stubs, Defendants did not calculate overtime bonus premiums as required by the FLSA. [*Id.* at ¶ 65.]

Defendants hire mostly African American women and Defendant Lynch, on numerous occasions, has been heard to say that she specifically hires African Americans because they are "too dumb" to understand how they are supposed to be paid and what benefits they are entitled to

5

and are getting. She has stated that she can offer to pay African Americans less and offer fewer benefits to them.[*Id.* at ¶ 36.] Defendant Lynch has stated that she keeps her payroll/labor costs down by hiring African Americans because they are "too dumb" to understand anything about their pay or read their paystubs.[*Id.* at ¶ 37.] Defendant Lynch would talk down to African Americans in a demeaning and intimidating manner whenever they would ask for any clarification or questions regarding their schedule, need for time off, or pay. [*Id.* at ¶ 38.] Defendants have never promoted or hired an African American to any management or office role. [*Id.* at ¶ 39.] Defendants discriminated against Plaintiff Moss and the Title VII Class on the basis of race, as well as subjected them to harassment and retaliation based on race.

### B. Evidence proving facts alleged in FAC obtained during discovery and other supporting evidence.

Documents produced by Defendants show they had a practice of automatically applying an 8-hour sleep time exclusion to every employees' 24-hour shift even though the employees submitted timesheets stating they worked 24 hours. *See* Exhibit 3 - Declaration of L. Michelle Gessner ("Gessner Decl.") at ¶ 2. Yet, Defendants failed to provide adequate sleeping arrangements for Plaintiff and the NCWHA Class. *See* Exhibit 1 - Declaration of Anita Moss ("Moss Decl.") at ¶ 3; *See* Exhibit 2 - Declaration of Jacqueline Gilchrist ("Gilchrist Decl.") at ¶ 3. Moss and the NCWHA Class were required to sleep on a sofa or chair. Moss Decl. at ¶ 4; Gilchrist Decl. at ¶ 4. Sometimes they brought an air mattress to sleep on the floor near the residents. *Id.*

In addition to not providing adequate sleeping arrangements, Defendants knew their clients were keeping employees awake most or all of the night and/or that employees were not getting any sleep. Moss Decl. at ¶ 5; Gilchrist Decl. at ¶ 5. Even though they had actual notice of interrupted sleep, Defendants never investigated or inquired whether employees' sleep time

6

was interrupted or were getting at least 5 hours of uninterrupted sleep. Moss Decl. at ¶ 6; Gilchrist Decl. at ¶ 6. Defendants had a practice of not asking or confirming with employees if their sleep time was being interrupted, instead they believed the entire burden was on employees to report if they did not get at least five hours of uninterrupted sleep. Moss Decl. at ¶ 7; Gilchrist Decl. at ¶ 7.

Defendants paid Plaintiff and NCWHA Class far less than the amount agreed in their Employment Agreements and made excuses when questioned about this practice. Moss Decl. at ¶ 8; Gilchrist Decl. at ¶ 8; Gessner Decl. at 3. A comparison of the Employment Agreements with pay stubs, all produced by Defendants, proves Defendants failed to pay as promised. Gessner Decl. at ¶¶ 4 and 5. NCWHA Class Member Gilchrist questioned Defendants about this practice but was not given a straight answer. Moss Decl. at ¶ 9; Gilchrist Decl. at ¶ 9.

Defendants paid Moss and the NCWHA Class what appears to be a daily rate, but it is not broken out by the number of hours or days worked. Instead it is a lump-sum payment for which the employees cannot determine accuracy because the number of 24-hour shifts is not reflected. Gessner Decl. at ¶ 6. Moreover, the "other earnings" or daily rate payments shown on the pay stubs of the NCWHA Class did not reflect the hours they worked during that pay period and/or the number of 24-hour shifts they worked that pay period. The paychecks were consistently incorrect and the NCWHA Class was systematically underpaid. Moss Decl. at ¶ 10; Gilchrist Decl. at ¶ 10. Throughout their employment, Moss and NCWHA Class Members received pay stubs that did not properly record or compensate them for all hours worked. Moss Decl. at ¶ 11; Gilchrist Decl. at ¶ 11. The Activity Reports produced by Defendants during discovery cannot be reconciled with the paystubs of the NCWHA Class Members. Gessner Decl. at ¶ 7.

7

Defendants also gave random "bonuses" to Moss and/or NCWHA Class Members, but the overtime rate failed to include the bonuses in the calculation. Gessner Decl. at ¶ 8; Moss Decl. at ¶ 12; Gilchrist Decl. at ¶ 12.

Defendants hired mostly African American caregivers because they believed they could pay them in violation of the NCWHA and the African American employees either would not figure out Defendants' pay practices violated the law or they would not sue Defendants to recover the unpaid wages. Moss Decl. at ¶ 13; Gilchrist Decl. at ¶ 13. Gilchrist and other Title VII Class Members notified Defendants that their pay was incorrect. Gessner Decl. at ¶ 9. When the Title VII Class Members complained to Defendants about being underpaid, they were harassed, ridiculed and/or terminated. Moss Decl. at ¶ 14; Gilchrist Decl. at ¶ 14;

## III. CERTIFICATION OF RULE 23 NCWHA CLASS

### A. Moss is a member of and has precisely defined the NCWHA Class she seeks to represent.

Plaintiff Moss seeks class certification of her claim that Defendants violated North Carolina's "payday statute," N.C. Gen. Stat. § 95-25.6 by failing to pay its employees for interrupted sleep time and overtime. To be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) the class must be so numerous that joinder of all members is impractical ("numerosity requirement"); (2) there must be questions of law or fact common to the class ("commonality requirement"); (3) the representative parties' claims must be typical of the claims of the class ("typicality requirement"); and (4) the representative parties must be able to fairly and adequately protect the interests of the class ("adequacy-of-representation requirement") . Fed. R. Civ. P. 23(a). The action must also satisfy one of the requirements set forth in Rule 23(b). See Fed. R. Civ. P. 23(b)(1), (2), (3).

8

Moss asserts that her claim alleging violation of N.C. Gen. Stat. § 95-25.6 is maintainable under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The court makes two initial determinations before determining whether to certify a class action: that a precisely defined class exists, *Haywood v. Barnes*, 109 F.R.D. 568, 576(E.D.N.C. 1986), and that the class representative is a member of the proposed class. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Here, the NCWHA Class is defined as: all in-home caregiver employees who were employed by Defendant working in North Carolina. Therefore, Moss is a member of the precisely-defined NCWHA Class which she seeks to represent.

### B. Moss can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Health Plan Services, Inc*., 348 F.3d 417, 424 (4th Cir. 2003) (citing *In re A.H. Robins*, 880 F.2d 709, 740) (4th Cir. 1989), cert. den*., Anderson v. Aetna Cas. and Sur. Co*., 493 U.S. 959 (1989)), cert. den*., Healthplan Services, Inc. v. Gunnells*, 542 U.S. 915 (2004); *see also Kidwell v. Transportation Communications International Union*, 946 F.2d 283, 305 (4th Cir. 1991), cert. den., 503 U.S. 1005 (1992) ("[t]rend is to give Rule 23 a liberal construction."); *Rodger v. Electronic Data Systems Corp*, 160 F.R.D. 532, 535 (E.D.N.C. 1995).

### 1. The NCWHA Class is sufficiently numerous and joinder is impracticable.

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. This prerequisite, however, does not require that joinder be impossible. *Coggin v. Sears, Roebuck and Company*, 155 Bankr. 934, 937 (E.D.N.C. 1993). Further, "no specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.), cert. denied, 469 U.S. 827, 83 L. Ed. 2d 53, 105 S. Ct. 110 (1984) (citing *Cypress v. Newport News General and Nonsectarian Hospital Association*, 375 F.2d 648, 653 (4th Cir. 1967)). Instead, an "application of the rule is to be considered in light of the particular circumstances of the case." *Id*. Although no definite standard exists in determining what actual size is required under Rule 23(a)(1), previous cases cited by the parties and as noted in relevant authority, suggest that a class as large as seventy-four persons is "well within the range appropriate for class certification (citation omitted)." *Brady,* 726 F.2d at 145. In fact, circuit precedent has recognized class certification in classes with as few as eighteen members, *id.* (citing *Cypress*, 375 F.2d at 653 (eighteen members)), and that a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable. *In Re Kirschner Medical Corporation Securities Litigation*, 139 F.R.D. 74, 78 (D.Md. 1991) (citing *Dameron v. Sinai Hospital of Baltimore, Inc.*, 595 F. Supp. 1404, 1408 (D.Md. 1984)). A district court has broad discretion in deciding whether to certify a class. *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348-49 (4th Cir. 1976); *Stott v. Haworth*, 916 F.2d 134 (4th Cir. 1990).

Here, Defendants have provided information that there are 44 members of the putative class, including Plaintiff Moss, which raises a presumption of sufficient numerosity. This is sufficiently numerous to meet requirements of Rule 23(a)(1). Although there are a sufficient

10

Case 3:20-cv-00137-FDW-DCK  Document 34  Filed 12/07/20  Page 10 of 19

number of putative class members to establish numerosity, this Court's analysis should not be limited to numbers alone. *See Rodger v. Electronic Data Sys. Corp*, 160 F.R.D. 532, 536-537 (EDNC 1995). The Court can also consider whether the named Plaintiff and members of the NCWHA Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the NCWHA Class meets the Rule 23(a)(1) standard for numerosity.

### 2. There are common questions of law and fact among the NCWHA Class Members.

Under the "commonality" requirements of Rule 23(a)(2), Fed.R.Civ.P., at least one common question of law or fact must exist among class members. *See Haywood*, 109 F.R.D. at 577-78. It is not necessary, however, that all of the questions of law or fact in a case be common to all putative class members, but only that "a single common question . . . exist." *Rodger*, 160 F.R.D. at 537.

The putative members of the NCWHA Class and Moss share similar questions of law and fact. Moss and the other putative class members were all non-exempt in-home care employees who worked for Defendants in North Carolina, and share the following common questions of law or fact: (a) whether Defendants paid Moss and the NCWHA the amount stated in their written Employment Agreements; (b) whether Defendants met the legal requirements for excluding sleep time, such as providing adequate sleeping arrangements and Plaintiff and the NCWHA Class receiving at least 5 hours of uninterrupted sleep; (c) whether Defendants failed to pay for interrupted sleep; (d) whether Defendants failed to pay for all hours worked; (e) whether Defendants paid Moss and the NCWHA at a rate of time-and-a-half for all hours worked over 40

11

hours per workweek; (f) whether Defendants failed to include the required information on the paystubs of Moss and the NCWHA Class; and (g) whether Defendants calculated the overtime rate of Moss and the NCWHA Class using the correct overtime bonus premium rate.

Therefore, the commonality requirement for the NCWHA Class is also satisfied.

### 3. Moss's NCWHA claims are typical of the NCWHA Class Members.

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defense of the class. *Haywood*, 109 F.R.D. at 578. "The claim of a party is typical if it arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." *Id*. "[T]he requirements of commonality and typicality tend to merge" in that "[b]oth serve as guideposts for determining whether under particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. The typicality requirement does not require that all of the putative class members share identical claims. *Rodger*, 160 F.R.D. at 538 ("A court may determine that the typicality requirement is satisfied even when the plaintiffs' claims and the claims of the class members are not identical"). The prerequisite is only that Plaintiff's claims be common, and "class representatives must not have an interest that is antagonistic to that of the class members." *Id*.

The facts alleged in Moss's FAC, which are corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the NCWHA Class. The claims of Moss and the claims of the members of the NCHWA Class arise from the same practices and course of conduct by Defendants. Moss and the members of the proposed NCWHA Class were also all non-exempt in-home caregiver employees who were employed by Defendants who had

12

Case 3:20-cv-00137-FDW-DCK     Document 34     Filed 12/07/20     Page 12 of 19

sleep time automatically excluded from each 24-hour shift, were not paid for sleep interruptions and were paid under a split-day pay scheme that purportedly included overtime even when they did not work overtime. There is substantial evidence in the form of time sheets, summaries of hours, pay stubs and other documentary evidence that Defendants violated the alleged Code sections and failed to pay Moss and the NCWHA Class Members for all hours worked and for overtime when they worked more than 40 hours in one week.  Therefore, Moss has established that the claims under the NCWHA are "typical" of the claims of the NCWHA Class that she seeks to represent.

### 4. Moss is an adequate representative of the NCWHA Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This is a two-part inquiry to determine: (1) whether the class representatives' claims are sufficiently interrelated to and not antagonistic with the class' claims and (2) that legal counsel is qualified, experienced and generally able to conduct the litigation. *Rodger*, 160 F.R.D. at 539; s*ee also Haywood*, 109 F.R.D. at 578.

Moss has met these requirements with respect to the NCWHA Class. She meets the first requirement by demonstrating their consistent involvement in the litigation. *Id.* at 578-79. Here, as in *Haywood*, she has a common interest with class members in the litigation, possesses a personal financial stake in the outcome, consulted regularly with Class Counsel, submitted declarations to the Court, and participated in responding to discovery and  will  participate in upcoming scheduled depositions and mediation. *Id.;* Gessner Decl., ¶ 10; Moss Decl. at ¶ 15. Moss understands her obligation as class representative in the event that the Court certified this as a class action with respect to the claims. Gessner Decl., ¶ 11; Moss Decl. at ¶ 16.  Further, Attorney Gessner, is an experienced class/collective action counsel who has previously been

13

Case 3:20-cv-00137-FDW-DCK    Document 34    Filed 12/07/20    Page 13 of 19

counsel in class action litigation, including class litigation involving claims that were materially similar to those asserted in the instant case. Gessner Decl. ¶ 12.

### C. The NCWHA Class satisfies the requirements of Rule 23(b)(3).

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. The factors used to make this determination are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3), Fed. R. Civ. P. *See also Haywood*, 109 F.R.D. at 580-84, and 592-93.

The proposed NCWHA Class satisfies the requirements of (b)(3) for the reasons already stated above as to Rule 23(a). *See Rossini v. Ogilvy & Mather, Inc*., 798 F.2d 590 at 598 (2d Cir. 1986) (holding that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"). Based on the allegations in the FAC and Defendants' own records, certification of the NCWHA Class is appropriate under Rule 23(b)(3). The legal and factual issues described in above predominate over any individual issues of law and fact for any NCWHA Class Member.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the NCWHA Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. "Additionally, because of the relatively small amount of the

14

wage claims in this case, no individual class member could have any reasonable financial capability to pursue this litigation on an individual basis." *See Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F. Supp. 2d 117, 131 (EDNC 2011). Furthermore, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending.

This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Moss and members of the NCWHA Class were all employed by Defendants that maintained payroll records and employee data for all of the 46 of the caregivers they directly employed, the management of a class action under Rule 23(b)(3) for NCWHA Class in this matter should not present any difficulties.

Moss thus seeks, on behalf of herself, individually, and all similarly situated employees of Defendants who work or worked in the state of North Carolina all of their accrued and earned regular and overtime wages which Defendants failed to pay on their regular pay date in violation of N.C. Gen. Stat. § 95-25.6, together with interest, liquidated damages, costs, fees and penalties as allowed for Defendants' violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.1 et seq.

## IV. CERTIFICATION OF RULE 23 Title VII Class

### A. Moss is a member of and has precisely defined the Title VII Class she seeks to represent.

Moss seeks class certification of her claim that Defendants violated Title VII. As noted above, to be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy-of-representation. Fed. R. Civ. P. 23(a). The race discrimination claims must also involve questions of law or fact common to class members that predominate over any questions affecting only individual members and the class action must be superior to other available methods for fairly

15

Case 3:20-cv-00137-FDW-DCK   Document 34   Filed 12/07/20   Page 15 of 19

and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The court also determines whether a precisely-defined class exists and whether the class representative is a member of the proposed class. *Haywood, supra,* at 576 and *East Texas, supra,* at 403.

Here, the Title VII Class is defined as: all African American in-home caregiver employees who were employed by Defendants working in North Carolina. Moss is a member of the precisely-defined NCWHA Class which she seeks to represent.

### B. Moss can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) for the Title VII Class.

#### 1. The Title VII Class is sufficiently numerous and joinder is impracticable.

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. There are 31 putative members of the Title VII Class, which raises a presumption of sufficient numerosity and is sufficiently numerous to meet requirements of Rule 23(a)(1). In addition, the named Plaintiff and members of the Title VII Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux, supra,* 987 F.2d at 936.

Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the Title VII Class meets the Rule 23(a)(1) standard for numerosity.

#### 2. There are common questions of law and fact as to the claims of Moss and the Title VII Class.

The putative members of the Title VII Class and the named Plaintiff share similar questions of law and fact. The named Plaintiff and the other putative class members were all African American in-home care employees who worked for Defendants, and share the following common questions of law or fact: (a) whether Defendants discrimination against Plaintiff and

16

members of the proposed Title VII Class on the basis of race in violation of Title VII; (b) whether Defendants harassed Plaintiff and members of the proposed Title VII Class on the basis of race, creating a hostile work environment in violation of Title VII; (c) whether Defendants retaliated against Plaintiff and members of the proposed Title VII Class on the basis of race in violation of Title VII; and (d) whether Defendant had no legitimate business reason for their conduct and/or whether such purported business reasons were pretextual.

Therefore, the commonality requirement for the Title VII Class is also satisfied.

### 3. Moss's Race Discrimination claims are typical of the Title VII Class Members.

The facts alleged in Moss's FAC, which are corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the Title VII Class. The claims of Moss and the claims of the members of the Title VII Class arise from the same practices and course of conduct by Defendants. Moss and the members of the proposed Title VII Class were also all African American in-home caregiver employees who were employed by Defendants who were subject to the same discriminatory, harassing and retaliatory practices of Defendants. Moss and members of the proposed Title VII Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

Therefore, Moss has established that the claims under Title VII are "typical" of the claims of the NCWHA Class that she seeks to represent.

### 4. Moss is an adequate representative of the Title VII Class.

Moss has met these requirements with respect to the Title VII Class. She has been consistently involved in this litigation, she has a common interest with class members in the litigation, she possesses a personal financial stake in the outcome, she consulted regularly with

Class Counsel, submitted declarations to the Court, and participated in responding to discovery and will participate in upcoming scheduled depositions and mediation.

As set forth above, Moss understands her obligation as class representative of the Title VII Class in the event that the Court certified this as a class action with respect to the claims. Further, Attorney Gessner, is experienced counsel who has previously been counsel in class action litigation, including class litigation involving claims that were materially similar to those asserted in the instant case.

### C. The Title VII Class satisfies the requirements of Rule 23(b)(3).

The proposed Title VII Class satisfies the requirements of Rule 23(b)(3) for the reasons already stated above as to Rule 23(a). Based on the allegations in the FAC and Defendants' own records, certification of the Title VII Class is appropriate under Rule 23(b)(3). The legal and factual issues described in above predominate over any individual issues of law and fact for any Title VII Class Member.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the Title VII Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. Furthermore, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending.

This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Plaintiff Moss and members of the Title VII Class were all employed by Defendants that maintained payroll records and employee data for all of the 31 African American caregivers they directly employed, the management of a class action under Rule 23(b)(3) for Title VII Class in this matter should not present any difficulties.

18

Case 3:20-cv-00137-FDW-DCK    Document 34    Filed 12/07/20    Page 18 of 19

## V. CONCLUSION

For the reasons set forth above, Plaintiff Anita Moss respectfully requests that her Motion for Class Certification of a NCWHA Class, Title VII Class be granted, and L. Michelle Gessner, of GessnerLaw, PLLC be appointed as class counsel.

Respectfully submitted this the 7th day of December 2020.

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NCSB#26590
> GESSNERLAW, PLLC
> 602 East Morehead Street
> G. G. Galloway House
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442; Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
> *Attorneys for Plaintiff and Putative Class Members*

## CERTIFICATE OF LENGTH

I certify that this brief was prepared using Word, which reports that it contains a total of 5810 words including all headings, captions and signature lines.

I declare under penalty of perjury under North Carolina law that the foregoing is true and correct.

Dated: December 7, 2020

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NCSB#26590
> GESSNERLAW, PLLC
> 602 East Morehead Street
> G. G. Galloway House
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442; Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
>
> *Attorneys for Plaintiff and Putative Class Members*